UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

-----------------------------------------------------

HANNAH FRAZIER,
an individual,

           Plaintiff,

    v.

**CIVIL ACTION NO. 2:21-cv-3948**

THE BOARD OF SUPERVISORS FOR THE
UNIVERSITY OF LOUISIANA SYSTEM, as
the political entity responsible for McNeese State
University; and DR. JAMES B. HENDERSON,
in his official capacity as the System President,

           Defendants.

-----------------------------------------------------

## <u>COMPLAINT</u>

Plaintiff, HANNAH FRAZIER, an individual, by and through her undersigned counsel, hereby files this Complaint and sues THE BOARD OF SUPERVISORS FOR THE UNIVERSITY OF LOUISIANA SYSTEM, as the political entity responsible for McNeese State University for damages (including nominal damages), injunctive and declaratory relief, attorneys' fees and costs, pursuant to Title II of the Americans with Disabilities Act, <u>42 U.S.C. § 12131</u> *et seq*. ("Americans with Disabilities Act" or "ADA"), and Section 504 of the Rehabilitation Act of 1973, <u>29 U.S.C. § 794</u> *et seq*. ("Rehabilitation Act"), and sues DR. JAMES B. HENDERSON, in his official capacity only, for injunctive and declaratory relief and attorneys' fees and costs, pursuant to the ADA and the Rehabilitation Act. THE BOARD OF SUPERVISORS FOR THE UNIVERSITY OF LOUISIANA SYSTEM and DR. JAMES B. HENDERSON are collectively referred to herein as "Defendants."

## JURISDICTION AND PARTIES

1. This is an action for declaratory and injunctive relief pursuant to Title II of the Americans with Disabilities Act, 42 U.S.C. §12131 *et seq*., and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 *et seq*.  This Court is vested with original jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because the Property that is the subject of this action is located in the Western District of Louisiana, Calcasieu Parish.

3. Plaintiff, Hannah Frazier, (hereinafter referred to as "Ms. Frazier") is a resident of Calcasieu Parish, Louisiana.

4. Ms. Frazier is a qualified individual with a disability under the ADA and Rehabilitation Act. Ms. Frazier has Charcot-Marie-Tooth disease ("CMT"). CMT is a neuromuscular condition that causes damage to the peripheral nerves outside of the brain and spinal cord.

5. Due to her disability, Ms. Frazier is substantially impaired in several major life activities and experiences mobility issues, loss of strength, migraines, and seizures. Ms. Frazier uses a wheelchair for mobility.

6. Ms. Frazier is a student at McNeese State University (hereinafter "McNeese"). Ms. Frazier is studying to obtain a degree in computer science.

7. Upon information and belief, defendant THE BOARD OF SUPERVISORS FOR THE UNIVERSITY OF LOUISIANA SYSTEM (hereinafter referred to as the "Board") is the political entity responsible for owning, administering, operating, and/or maintaining McNeese.

8.     Upon information and belief, Defendant DR. JAMES B. HENDERSON (hereinafter referred to as "Dr. Henderson") is the President and CEO of the University of Louisiana System and is responsible for the functioning and control of all of the programs and services offered by the Board. Dr. Henderson is sued in his official capacity for declaratory and injunctive and attorneys' fees/costs under the ADA and the Rehabilitation Act, pursuant to the doctrine of *Ex parte Young*.

9.     Upon information and belief, the Board is the owner and/or operator of the service, property, improvements, accommodations, and programs which are the subject of this action, to wit: McNeese State University, generally located at 4205 Ryan Street, Lake Charles, LA 70605 (hereinafter sometimes referred to as the "Property").

10.    Defendants are responsible for complying with the obligations of the ADA and the Rehabilitation Act.

## COUNT I
## VIOLATION OF TITLE II OF THE ADA

11.    Ms. Frazier realleges and reavers paragraphs 1-10 as if they were expressly restated herein.

12.    Upon information and belief, the Board is a public entity, subject to the ADA, which owns and administers the Property.

13.    The Property is a university of higher education.  The Property is also a centerpiece of the broader Lake Charles community.

14.    Upon information and belief, the Board develops and provides the various services and programs offered at the Property. The services and programs at issue in this case include, but are not limited to: transportation (including walkways, roads, and parking facilities);

3

dining; shopping; meetings; assemblies; special events; trainings; research (including libraries); and other educational and recreational programs and services.

15.    Ms. Frazier has been to the Property many times in the past.  Ms. Frazier is currently enrolled as a student at McNeese. Ms. Frazier also often uses the Property for programs and activities unrelated to her studies, such as to attend events, meet with friends, visit the library, enjoy the sights on campus, or shop for food and other goods and services.

16.    While at the Property, Ms. Frazier has encountered numerous architectural barriers while attempting to navigate the Property with her wheelchair.

17.    While at the Property, Ms. Frazier has had difficulty accessing certain areas as a result of the lack of accessible routes and the lack of compliant curb cuts and curb ramps, among other things.

18.    While at the Property, Ms. Frazier has experienced serious difficulty utilizing the services and programs offered at the Property due to the architectural barriers discussed herein.

19.    For example, and for illustrative purposes only, Ms. Frazier has encountered architectural barriers and experienced difficulty while traveling to and from the Office of Accessibility Services because it is located on the Second Floor of Drew Hall, where the elevator is frequently broken.

20.    Ms. Frazier is also unable to access any of the student organization offices because they are located up a set of stairs in the Student Union Annex, without the required access ramp, and are inaccessible to wheelchair users.

21.    Ms. Frazier encountered many of the architectural barriers described herein within the year preceding the filing of the Complaint in this action.

22.   Ms. Frazier plans to and will return to the Property in the near future to utilize the programs and activities administered at the Property.

23.   Ms. Frazier fears that she will continue to experience serious difficulty at the Property due to the barriers discussed in Paragraph 37, which still exist.

24.   The barriers discussed below are excluding Ms. Frazier from the programs and activities offered at the Property.

25.   The barriers discussed below are depriving Ms. Frazier of the equal opportunity to participate in, benefit from, or utilize the programs and activities offered at the Property.

26.   In an effort to remedy the barriers without resorting to a lawsuit, on October 14, 2021, Ms. Frazier emailed the list of barriers set forth in Paragraph 37 to Timothy Delaney, ADA coordinator for Defendants.

27.   In her correspondence, Ms. Frazier advised Defendants of her disability and need for a wheelchair and the widespread ADA barriers at the Property.

28.   After identifying the physical ADA barriers, Ms. Frazier advised that:

> It has been over 31 years since the passage of the ADA. Please remedy the ADA violations and bring this site into compliance with the requirements, provisions, and regulations of the ADA and the Rehabilitation Act within thirty (30) days. Thank you.

29.   On October 15, 2021, Tim Frazier responded to Ms. Frazier by saying:

> Hannah, I will forward this list to the proper authorities. Most of these would fall under the office of Facilities.. I did report the stolen push button for Drew Hall. I guess it was stolen. It's definitely not there anymore. Our office has not been in Drew since July. We are located in the Library in room 102. A campus wide email was sent out plus on my emails that I sent to instructors, which I include the student, mentions that. On number 8, you have to let me know that, preferably the first few days of school and I'll put one in there. There were tables in most rooms before the hurricanes. The removed every desk from the building and when they returned them, I'll assume they did put everything back. I wonder what they did with all my tables in Farrar hall? Anyway, it's me that has to move the tables, no

one else does it but you have to let me know. Sorry you are having all these things going on. I'll forward this to my boss and the facilities director and the provost.

30.    On October 15, 2021, Ms. Frazier met with Kendrick Nicholas, the Dean of Students for DEFENDANTS regarding a matter unrelated to her disability-related concerns. At the end of the meeting, he brought up the reasonable accommodation request and asked for clarification on some items which Ms. Frazier gladly agreed to provide. The two discussed some items, but no concrete plans for barrier removal were shared.

31.    On October 19, 2021, Dr. Chris Thomas, Vice President for Student Affairs emailed Ms. Frazier, asking for a meeting during a three-hour window "to meet in my office and discuss."

32.    After evaluating Mr. Thomas's proposal, Ms. Frazier decided that a meeting was not needed for DEFENDANTS to achieve that which they have already had more than thirty-one years to accomplish, namely, remedying the ADA barriers.

33.    Accordingly, on or about October 21, 2021, Ms. Frazier advised Mr. Thomas that she was not interested in a meeting, but that she was interested in DEFENDANTS remedying the ADA barriers.

34.    Ms. Frazier concluded the email by stating "Please advise what steps McNeese intends on taking to remedy the barriers and when I can expect the barriers to be remedied."

35.    Despite the passage of several weeks, Ms. Frazier has received no response from DEFENDANTS and has received no indication or suggestion that DEFENDANTS intend on remedying the ADA barriers.

36.    Upon information and belief, Defendants have discriminated against Ms. Frazier, and continue to discriminate against Ms. Frazier, in violation of the ADA/Rehabilitation Act,

*inter alia* by excluding and/or denying Ms. Frazier the benefits of its services, programs, and/or activities; by failing to ensure accessible facilities within five (5) years of January 26, 1992; by failing to ensure that all portions of the Property that were constructed or altered after January 26, 1992 were made readily accessible and usable by individuals with disabilities to the maximum extent practicable; and/or by failing to maintain the accessible features at the Property in operable working condition.

37.   Ms. Frazier's visits to the Property show that the program, when viewed in its entirety, is not accessible to people with mobility-related disabilities. The physical barriers to access at the Property include, but are not limited to:

    a)   The pedestrian crossing button on east side of Beauregard Drive and Ryan Street is too high and located on top of grass. The west side button is also over grass and too high;

    b)   There is an impermissible cross-slope on the sidewalk on the south side of Beauregard Drive;

    c)   The section of Beauregard Drive that has the least steep cross-slope has branches that hang low and obstruct the accessible route;

    d)   The picnic tables along Beauregard Drive are inaccessible to wheelchair users as there is an impermissibly high threshold blocking the accessible route;

    e)   There is no wheelchair seating for the picnic tables along Beauregard Drive;

    f)   The computer lab in Kirkman Hall does not have accessible seating;

    g)   There is an impermissibly high threshold blocking the entrance of Kirkman Hall;

h) The classrooms in Kirkman Hall do not contain accessible seating and/or tables;

i) The Office of Accessibility Services is located on the second floor of Drew Hall. However, the elevator is nearly constantly broken, making it functionally inaccessible to wheelchair users. Upon information and belief, this office has moved to the library. However, Ms. Frazier encountered difficulty before the office was moved;

j) There is an automatic door opener to enter Drew Hall but here is no corresponding button on the inside to exit the building;

k) There are no curb cuts to cross Jefferson Davis Drive along Beauregard Drive, among other locations at the Property;

l) The crosswalk adjacent to Kirkman Hall is cracked and has a large gap;

m) The sidewalk along the northern side of Beauregard Drive is cracked, not smooth, and contains impermissible cross-slopes. There is also a dangerous storm grate with long holes that are a tripping/falling hazard;

n) There are many cracks/gaps/impermissible changes in level along accessible routes all over the campus;

o) There are many high-top tables and no accessible tables in the Holbrook Student Union;

p) The student government room in the Holbrook Student Union is inaccessible due to two steps;

q) There are vending machines with controls that are too high in the Holbrook

Student Union;

r)   There is no accessible seating in the cafeteria;

s)   The phone charging station in the Holbrook Student Union is too high;

t)   In the food court area in the Holbrook Student Union there are study nooks that are high-top only;

u)   There is no elevator to the second floor of the Student Union Annex, where all of the student organizations are located;

v)   The picnic benches outside the Student Union Annex are located up a step and are not accessible;

w)   Throughout the campus, there are inaccessible entrances to buildings that do not contain signage denoting the location of the accessible entrances;

x)   Throughout the campus, there are inaccessible bathrooms that do not contain signage as to the location of the accessible bathrooms;

y)   The service counters are too high in Smith Hall;

z)   The automatic door mechanism is not plugged in at the entrance to the Shearman Fine Arts Building;

aa) There are inaccessible water fountains in the Shearman Fine Arts Building;

bb) The main entrance to the recital hall is not accessible and does not contain signage as to the location of the accessible entrance;

cc) The service counter is too high in the Ralph O. Ward Memorial Arena;

dd) The curb cuts along Beauregard Drive and Common Street are cracked, broken, and contain impermissible slopes; and

  ee) Other current mobility-related barriers and violations of the Americans with Disabilities Act to be identified during a complete inspection of the Property.

38. 42 U.S.C. § 12133 provides: "[t]he remedies, procedures, and rights set forth in section 794 of Title 29 shall be the remedies, procedures, and rights this subchapter provides to any person alleging discrimination on the basis of disability in violation of section 12132 of this title."

39. Defendants have discriminated against Ms. Frazier by denying her full access to the services, programs, and/or activities by failing to make their facilities readily accessible as required by U.S.C. §12132 and its implementing regulations 28 C.F.R. Part 35.101-35.190 *et. seq.*

40. Defendants have discriminated, and are continuing to discriminate, against Ms. Frazier in violation of the ADA by excluding and/or denying Ms. Frazier the full and equal benefits of its services, programs, and/or activities by failing to, inter alia, have accessible facilities. Ms. Frazier personally experienced the numerous barriers to access on the Property discussed herein.

41. 28 C.F.R. § 35.130(4) states that "[a] public entity may not, in determining the site or location of a facility, make selections – (I) [t]hat have the effect of excluding individuals with disabilities from, denying them the benefits of, or otherwise subjecting them to discrimination..." Defendants have violated this provision by providing their services, programs, and/or activities at an inaccessible facility.

42. Defendants have discriminated against Ms. Frazier by excluding her from participation in, and denying the benefits of, the services, programs, and/or activities at its Property

because of Ms. Frazier's disability, all in violation of 42 U.S.C. § 12132.

43.     Upon information and belief, Defendants continue to discriminate against Ms. Frazier by failing to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, programs, activities, facilities, privileges, advantages or accommodations to individuals with disabilities; and by failing to make such efforts that may be necessary to ensure that no individual with a disability is excluded, denied services, programs, and/or activities, segregated or otherwise treated differently than other individuals because of failure to remove architectural barriers.

44.     Defendants have actual and/or constructive knowledge that mobility-related accessibility issues exist at the Property.

45.     Defendants' policies and practices have a discriminatory impact on people with nobility-related disabilities.

46.     Defendants' policies and practices have a disparate impact on people with mobility-related disabilities.

47.     The harms suffered by Ms. Frazier were the foreseeable result of Defendants' actions and inactions constituting discrimination.

48.     The harms suffered by Ms. Frazier were the foreseeable result of Defendants' neglecting their affirmative duty to ensure that the programs and activities offered at the Property are fully accessible to wheelchair users.

49.     Based on the facts alleged above, the Board, through its employees, intentionally discriminated against Ms. Frazier.

50.     Further, the Board, through its employees, was purposeful in its choices, which is sufficient to constitute intentional discrimination under the ADA.

51.     Defendants' discrimination described herein has resulted in a cognizable injury to Ms. Frazier.  As a direct and proximate result of Defendants' unlawful discrimination, Ms. Frazier has suffered frustration, inconvenience, anxiety, humiliation, exclusion, isolation, and an invasion of her civil rights.

52.     Ms. Frazier is therefore entitled to compensatory and nominal damages from the Board caused by Defendants' unlawful discrimination.[1] With regards to nominal damages, it is Ms. Frazier's position that even an award of nominal damages would confer significant civil rights to the public, as a judgment in her favor against the Board, regardless of the amount, would deter Defendants from discriminating against individuals with disabilities in the future.

53.     Upon information and belief, Ms. Frazier has been denied access to, and has been denied the benefits of services, programs and/or activities of the Property, and has otherwise been discriminated against and damaged by Defendants because of their discrimination, as set forth above.

54.     Ms. Frazier will continue to suffer such discrimination, injury and damage without the immediate relief provided by the ADA as requested herein. Furthermore, as required by the ADA and other remedial civil rights legislation, to properly remedy Defendants' discriminatory violations and avoid piecemeal litigation, Ms. Frazier requires a full inspection of the Property in order to catalogue and cure all the areas of non-compliance with the ADA.

---

[1] Ms. Frazier does not seek monetary damages from Dr. Henderson.

55.   Ms. Frazier has retained the undersigned counsel and is entitled to recover reasonable attorneys' fees, costs and litigation expenses from Defendants pursuant to 42 U.S.C. § 12205 and 28 C.F.R. § 35.175.

56.   Ms. Frazier is suffering irreparable harm.

57.   Pursuant to 42 U.S.C. § 12131, *et seq*., this Court is provided authority to grant Ms. Frazier's injunctive relief including an Order directing Defendants to alter the Property to make their programs, services, and accommodations readily accessible to and useable by Ms. Frazier and all other persons with mobility-related disabilities as defined by the ADA.

58.   Defendants have discriminated against Ms. Frazier, and continue to discriminate her, *inter alia,* by failing to ensure that all portions of the Property that were constructed or altered after January 26, 1992 were made readily accessible and usable by individuals with disabilities to the maximum extent practicable. Upon information and belief, some of the architectural barriers discussed above in Paragraph 37 are located in parts of the Property which were newly constructed and/or altered after January 26, 1992, and are therefore subject to the heightened standards of 28 C.F.R. Part 35.151.

59.   Upon information and belief, Defendants continue to discriminate against Ms. Frazier by failing to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, programs, activities, facilities, privileges, advantages or  accommodations to individuals with disabilities; and by failing to make such efforts that may be necessary to ensure that no individual with a disability is excluded, denied services, programs, and/or activities, segregated, or

otherwise treated differently from other individuals because of the absence of auxiliary aids and services.

60.   Upon information and belief, Ms. Frazier has been denied access to, and has been denied the benefits of, services, programs and/or activities offered by Defendants at the Property, and has otherwise been discriminated against and damaged by Defendants, because of Defendants' discrimination, as set forth above.

61.   Ms. Frazier will continue to suffer such discrimination, injury, and damage without the relief provided by the ADA and Rehabilitation Act requested herein. Furthermore, as required by the ADA, Rehabilitation Act, and other remedial civil rights legislation, to properly remedy Defendants' discriminatory violations and avoid piecemeal litigation, Ms. Frazier demands and injunction ordering Defendants to bring all areas of the Property into compliance with the ADA.

## COUNT II
## VIOLATION OF THE REHABILITATION ACT

62.   Ms. Frazier adopts and re-alleges the allegations contained in paragraphs 1-61 as if fully stated herein.

63.   Ms. Frazier brings this claim against Defendants, based upon Section 504 of the Rehabilitation Act, 29 U.S.C. §794, *et seq.*

64.   The Rehabilitation Act provides that:

> No otherwise qualified individual with handicaps in the United States, as defined by 7(8) [29 USCS § 706(8)], shall, solely by reason of his or her handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.  29 U.S.C. § 794(a).

14

65.     Upon information and belief, as set forth herein, Defendants have violated the Rehabilitation Act by intentionally excluding Ms. Frazier, solely by reason of her disability, from the participation in, and denying her the benefits of, and have otherwise subjected her to discrimination under Defendants' programs and activities.

66.     Upon information and belief, a non-exclusive list of Defendants' violations of the Rehabilitation Act and discriminatory conduct against Ms. Frazier are evidenced by:

A.     denying Ms. Frazier access to, and the opportunity to participate in or benefit from, the aids, benefits, activities, programs, accommodations, and services offered at the Property;

B.     by otherwise limiting Ms. Frazier in the enjoyment of the rights, privileges, advantages, and opportunities enjoyed by individuals without disabilities who receive Defendants' aids, benefits, and services at the Property;

C.     making facility site or location selections that have the effect of discriminating against individuals with disabilities, and excluding them from and denying them the benefits of, and defeating or substantially impairing the accomplishment of the objectives of, the services, programs, and activities offered by Defendants at the Property;

D.     failing to administer services, programs, and activities in the most integrated setting appropriate to the needs of Ms. Frazier;

E.     excluding Ms. Frazier from participation in, and the benefits of, Defendants' services, programs, and activities as a result of Defendants'

Property being inaccessible to or unusable by Ms. Frazier; and

F.    failing to design and/or construct new facilities, or make alterations to existing facilities, which are readily accessible to and useable by individuals with disabilities.

67.    Upon information and belief, there are additional, ongoing violations of the Rehabilitation Act at the Property which Ms. Frazier is more likely than not going to encounter upon future visits to the Property.  Ms. Frazier brings this action:

A.    to redress injuries suffered as a result of Defendants' discriminatory actions and inactions, as set forth herein;

B.    to reasonably avoid further and future injury as a result of Defendants' ongoing failure to cease their discriminatory practices as set forth in this action, including correcting violations of the ADA and Rehabilitation Act;

C.    to ensure Defendants' Property is accessible as required by the relevant applications of Title II of the ADA;

D.    to be made whole and ensure future compliance; and

E.    to reasonably avoid future ADA and Rehabilitation Act litigation involving the same Property and under the same laws, as set forth herein, with its concomitant impact on otherwise scarce judicial resources.

68.    Only through a complete inspection of the Property and related facilities, undertaken by Ms. Frazier and/or her representatives, can all said violations be identified and cured so as to ensure access for people with mobility-related disabilities, the primary purpose of this action.

16

69.     Upon information and belief, the Board is the recipient of federal funds.

70.     Upon information and belief, as the recipient of federal funds, the Board is liable for compensatory and nominal damages to Ms. Frazier as a result of its acts and omissions constituting intentional discrimination.[2]  It is Ms. Frazier's position that even an award of nominal damages in her favor would confer significant civil rights to the public, as a judgment of against the Board, regardless of the amount, would likely deter Defendants from discriminating against individuals with disabilities in the future.

71.     As set forth above, Ms. Frazier has been denied access to, and without the relief requested herein will continue to be denied the access to, the goods, services, programs, facilities, activities, and accommodations offered by Defendants, solely by reason of her disability, and has otherwise been discriminated against and damaged solely by reason of her disability, as a result of Defendants' Rehabilitation Act violations set forth above.

72.     Ms. Frazier has been obligated to retain undersigned counsel for the filing and prosecution of this action.  Ms. Frazier is entitled to recover reasonable attorneys' fees, costs, and litigation expenses from Defendants pursuant to 29 U.S.C. §794(b).

73.     Pursuant to 29 U.S.C. §794(a), this Court is provided authority to grant Ms. Frazier injunctive relief, including an Order that Defendants alter the subject premises, facilities, services, activities, programs, and accommodations to make them accessible to and useable by individuals with disabilities to the extent required by the Rehabilitation Act. This Court is also provided authority to grant Ms. Frazier compensatory damages for the Board's discriminatory actions.

## **PRAYER FOR RELIEF**

---

[2] Ms. Frazier does not seek monetary damages from Dr. Henderson.

WHEREFORE, Ms. Frazier prays that:

A.    This Court issue a Declaratory Judgment that determines that Defendants are in violation of Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 *et seq*;

B.    This Court issue a Declaratory Judgment that determines that the Property, programs, and activities owned, operated, and administered by Defendants are in violation of the Rehabilitation Act;

C.    This Court grant injunctive relief against Defendants, including an Order to make all readily achievable alterations to the Property; or to make the Property readily accessible to and usable by individuals with disabilities to the extent required by the ADA; and to require Defendants to make reasonable modifications in policies, practices, or procedures necessary to afford all offered goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities; and to require Defendants to take such steps that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated, or otherwise treated differently from other individuals because of the absence of auxiliary aids and services;

D.    This Court enter an Order directing Defendants to alter and modify the Property and its facilities, services, activities, programs, and accommodations as appropriate to comply with the ADA and the Rehabilitation Act;

E.     This Court award Ms. Frazier monetary damages (including nominal damages) pursuant to the ADA and/or Rehabilitation Act, for the harmed caused by the Board's discrimination;

F.     This Court award Ms. Frazier reasonable attorneys' fees, costs, and litigation expenses pursuant to 29 U.S.C. § 794a(a)2 and 42 U.S.C. § 12205 and 28 C.F.R. § 35.175; and

G.     Such other relief as the Court deems just and proper, and/or is allowable under Title II of the ADA and the Rehabilitation Act.

Respectfully Submitted,

**BIZER & DEREUS, LLC**
*Attorneys for Plaintiff*

/s/ Andrew D. Bizer
ANDREW D. BIZER (LA # 30396)
GARRET S. DEREUS (LA # 35105)
EMILY A. WESTERMEIER (LA # 36294)
3319 St. Claude Ave.
New Orleans, LA 70117
T: 504-619-9999; F: 504-948-9996
Email: andrew@bizerlaw.com
        gdereus@bizerlaw.com
        ewest@bizerlaw.com